lowing Monday. With whichever party lies the truth we need not determine, as the testimony of the plaintiff is that the deposit was placed with Epstein, and it is not claimed or shown that Schlam ever had it or any portion of it. The judgment as to him must therefore be reversed.

Judgment as to defendant Schlam reversed, and new trial ordered, with costs to appellant to abide the event.

---

### STRONG v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, First Department. December 24, 1908.)

CARRIERS (§ 318*)—INJURIES TO PASSENGERS—DEFECTIVE STATION PLATFORMS—
    EVIDENCE—SUFFICIENCY.

In an action for injuries to a passenger, slipping on a station platform after alighting from a train, evidence *held* not to support a finding that the carrier negligently failed to keep the platform free from snow and ice during the continuance of a storm at the time of the accident.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1314; Dec. Dig. § 318.*]

Patterson, P. J., dissenting.

Appeal from Trial Term.

Action by Antoinette Strong against the Long Island Railroad Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-LIN, CLARKE, and SCOTT, JJ.

William C. Beecher, for appellant.
Albert C. Smyth, for respondent.

INGRAHAM, J. The plaintiff, a woman 63 years of age, had 12 years prior to this accident sustained a fracture of the hip, which made her quite lame and interfered to some extent with locomotion. She was an inmate of an Institute for Old Ladies, Incurables, and Cripples. On December 10, 1904, after having spent the summer and fall in Sharon, Conn., she started to pay a visit to a relative on Long Island. At Long Island City she boarded a train on the defendant's road for Bayshore at 2 o'clock in the afternoon, and upon arriving at the station at Bayshore found the platform covered with snow. The platform slanted from the building towards the track, was not inclosed, and had no roof. Where plaintiff alighted from the rear car of the train was about 40 or 50 feet from the gate at the east end of the platform, through which she wished to pass. The plaintiff's brother met her as she got off the car, and took hold of her arm to help her along; but after she had taken about a dozen steps she fell. The plaintiff's right leg was broken a short distance above the knee. At the time of the accident she was using two crutches in consequence of the former fracture of her hip, which she had been in the habit

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of using for many years, and was not able to walk without them. It had been snowing while the plaintiff was coming from Long Island City to Bayshore, and was still snowing when she arrived. There was evidence that prior to the accident, during the month of December, there had been snow off and on; that over 100 people a day used this station, and during the previous snowstorm people passing up and down tramped the snow down hard and flat; that there had subsequently been rain and frost, which made ice; that it had been raining or sleeting within a day or two of the accident; that after the prior snowstorms the snow had been scraped off the platform, but some of it had thawed and formed into ice; and that the week before the accident there were snowstorms and rough, cold weather. The plaintiff then rested, and defendant moved to dismiss the complaint, which was denied, and exception taken.

For the defendant the station agent at Bayshore testified that on December 10th it had been snowing at a quarter before 7 in the morning, and that during the day he shoveled and swept the snow off the platform; that there was no ice on the platform the day before the accident; that during the forenoon of the day of the accident he swept off the platform about noon; that the snow increased during the afternoon, and about 3 o'clock there were two inches of snow on the platform; that at that time two men were at work clearing the snow off the platform, and these men were working when the plaintiff arrived; that it was cold, freezing weather on the day of the accident; that the train the plaintiff came on was the fifth train from the east that day; that there were 26 east-bound and 26 west-bound trains during each day, and 125 or 150 passengers passed along this platform daily, besides the employés of the railroad. He further testified that it was his habit to use salt and ashes when any ice formed on the platform. The length of this platform was 700 feet, and the width 13 feet. At the time of the accident the men at work had shoveled the snow from 550 feet of the platform. Where the plaintiff fell was a part that had not been cleaned off; the men not having reached it. The testimony having closed, the defendant again moved to dismiss the complaint, which motion was denied, and the jury found a verdict for the plaintiff.

At the request of the defendant the court charged the jury that the railroad company was not required to keep the platforms at open country stations at all times free from snow and ice during a continuous snowstorm; that the law did not require the defendant to sprinkle sand, ashes, or sawdust on the platform during the prevalence of a snowstorm; also that the possible existence of small patches of ice under the fall of snow was not so obviously dangerous to travelers that the defendant was bound to anticipate that injury might be sustained by reason of it.

I think the verdict was against the weight of evidence. The evidence is undisputed that for several days prior to this accident there were storms of sleet, rain, and snow, with alternate thawing and freezing weather; that on the day of the accident it commenced snowing early in the morning, and continued until the time of the accident; that the defendant had provided men to clean the platform, and these men were at work when the train on which the plaintiff was a passen-

ger arrived at the station; that the plaintiff attempted to walk with crutches and with the assistance of her brother through the snow, and while there slipped and sustained the injury for which she has recovered. That during a period of alternate snowing, raining, and freezing and thawing weather there should be small patches of ice upon an exposed platform is the constant experience of every one in this climate. With passengers and others constantly using a platform of this kind during a snowstorm, the snow becomes packed and has the appearance of ice, and when this packed snow is again covered with fresh fallen snow all such platforms become slippery, and under such conditions there is no way known by which such conditions can be prevented. If, a reasonable time after the snowstorm had ended, no attempt had been made to clean the platform of both ice and snow, and a person had been injured, a different question would have been presented. But it was during the continuance of the storm, when men had been at work all day trying to keep this platform clear of snow. that this accident happened, and it is impossible to see what more the defendant could have done to provide a safe place for passengers to alight. There is no evidence that any other person had slipped upon the platform, or that the defendant had any notice that it was in a dangerous condition.

In Weston v. New York Elevated Railroad Company, 73 N. Y. 595, relied upon by the plaintiff, the crucial evidence to sustain the verdict, as stated by the court, was that it had snowed during the day and before the accident, that the snow had been but partially removed from the platform, that the surface was lumpy and uneven, and ice had formed upon it, rendering the footing unsafe and dangerous, and that other persons at the same time also slipped. The evidence in this case is quite different. During the preceding rain and snow storms there had been small patches of ice, not more than one-quarter of an inch thick, upon the platform; but there is no evidence that ice continued on the platform up to the time of the accident, or that it was such ice that caused the plaintiff to fall. The condition of the platform can be fully explained by the conditions existing on the day of the accident, and I think that under such circumstances a finding that the defendant was negligent was against the weight of evidence.

I think, therefore, the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

LAUGHLIN, CLARKE, and SCOTT, JJ., concur. PATTERSON, P. J., dissents.